MARED INDUSTRIES, INC., Plaintiff-Appellant,

v.

Alan MANSFIELD, individually, and d/b/a Diamond Blade Warehouse, Defendants-Respondents-Petitioners.

Supreme Court

*No. 03–0097. Oral argument September 9, 2004.—Decided January 20, 2005.*

2005 WI 5

(Also reported in 690 N.W.2d 835.)

352

For the defendants-respondents-petitioners there were briefs by *Michael J. Cohen, Catherine R. Grogan* and *Meissner Tierney Fisher & Nichols, S.C.,* Milwaukee; and *Glenn L. Udell* and *Brown, Udell & Pomerantz, Ltd.,* Chicago, IL, and oral argument by *Michael J. Cohen.*

For the plaintiff-appellant there was a brief by *Christopher J. Conrad, Mark S. Nelson* and *Nelson, Connell & Conrad, S.C.,* Brookfield, and oral argument by *Christopher J. Conrad.*

¶ 1. LOUIS B. BUTLER, JR., J. Alan Mansfield seeks review of a portion of the court of appeals' decision that concluded (1) Wis. Stat. § 801.11(1)(d)

(2001–02)[1] allows substituted service on a natural person's agent; and (2) service on Mansfield's purported agent under that provision was proper because the process server reasonably relied on the purported agent's representations that he was authorized to accept service for Mansfield. *Mared v. Mansfield,* No. 03–0097, unpublished slip op., ¶¶ 12, 19 (Wis. Ct. App. Nov. 4, 2003).[2] Mansfield argues the court of appeals erred by interpreting § 801.11(1)(d) in a manner that allowed service on a natural person's agent without authorization from "any other statute." Alternatively, Mansfield contends that even if § 801.11(1)(d) generally allows service on a natural person's agent, the court of appeals erred by essentially concluding apparent au-

---

[1] Wisconsin Stat. § 801.11 provides in pertinent part:

A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:

. . . .

(d) In any case, by serving the summons in a manner specified by any other statute upon the defendant or upon an agent authorized by appointment or by law to accept service of the summons for the defendant

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[2] The other portion of the court of appeals' decision concluded Mared did not sue Diamond Blade Warehouse, Inc., by naming "Mansfield individually and 'd/b/a' Diamond Blade Warehouse." *Mared v. Mansfield,* No. 03–0097, unpublished slip op., ¶¶ 12, 19, 23 (Wis. Ct. App. Nov. 4, 2003). As Mared has not sought review of the court of appeals' decision concerning Diamond Blade Warehouse, Inc., we do not reach that portion of the court of appeals' decision. Further, our recitation of the facts and discussion are tailored to those that are relevant to Mansfield's appeal.

thority satisfies § 801.11(1)(d)'s requirement that the agent be "authorized by appointment" to accept service of summons. Mansfield submits that the appropriate standard is actual express authority.

¶ 2. We agree with the court of appeals that Wis. Stat. § 801.11(1)(d) permits substituted service on a natural person's agent. However, we conclude the court of appeals erred by determining that apparent authority satisfies Wis. Stat. § 801.11(1)(d)'s "authorized by appointment" standard. We hold that "authorized by appointment" requires the principal to provide an agent with actual express authority to accept service of summons for the principal. Accordingly, we reverse the court of appeals' decision and remand this matter to the trial court.

I

¶ 3. Mansfield is the sole shareholder and president of Diamond Blade Warehouse, Inc., an Illinois corporation located in Buffalo Grove, Illinois. On June 5, 2002, Mared filed a complaint against Mansfield individually and doing business as Diamond Blade Warehouse, alleging breach of contract and intentional interference with contractual relations.

¶ 4. On June 10, William Monsen, an Illinois process server, went to the warehouse and told a receptionist he had a summons and complaint to serve on Mansfield. The receptionist asked Monsen to wait while she called someone. A few minutes later Michael Levy, a Diamond Blade employee, appeared and identified himself as director of operations and asked how he could help Monsen. According to Monsen, he indicated to Levy that he had court documents to serve on Mansfield. Monsen testified that Levy stated that he was authorized to accept service on behalf of Mansfield.

355

At that point, Monsen said he reiterated that he had to serve Mansfield personally, but Levy again indicated that he was authorized to accept the summons on Mansfield's behalf. Satisfied with Levy's representations, Monsen gave Levy the papers and explained that an action had been initiated against Mansfield and that he had 45 days to answer.[3] Monsen then left and later completed an affidavit of service that reflected he served Mansfield by leaving copies of the summons and complaint with Levy, "a registered agent or agent of the company" who "insisted that he has full authorization from Mr. Mansfield to accept these documents on behalf of Mr. Mansfield."

¶ 5. After Mansfield's time to answer passed, Mared moved for a default judgment, which the trial court granted on August 5. On August 22, Mansfield filed a motion to reopen the judgment on the grounds that he was not properly served. Mansfield submitted an affidavit that stated he did not authorize Levy to accept summons and that Levy was not his agent.

¶ 6. At the motion hearing on September 9, Monsen testified he served Levy because of Levy's clear and repeated representations that he was authorized to accept service for Mansfield. Neither Mansfield nor Levy testified.[4]

---

[3] There is a factual dispute concerning how many copies of the summons and complaint Monsen served on Levy. Monsen testified that he served Levy with two copies, while Levy averred in an affidavit that Monsen only served one copy.

[4] Nearly two months after the trial court reopened the default judgment against Mansfield, Levy submitted an affidavit in response to Mared's contention that Diamond Blade Warehouse, Inc., was properly served. In the affidavit, Levy indicated he was an employee of Diamond Blade; Monsen served him with one copy of a summons and complaint; and, if

¶ 7. On September 19, the Milwaukee County Circuit Court, Honorable Maxine A. White, vacated the default judgment. Monsen's testimony notwithstanding, the circuit court concluded Mansfield should have been served personally, pursuant to Wis. Stat. § 801.11(1)(a), or by leaving a copy of the summons at his abode with either a competent family member over the age of 14 or an adult currently residing at the abode, pursuant to § 801.11(1)(b)1 and 1m. Because Monsen left the summons at Mansfield's workplace and not his abode, the circuit court concluded the service was ineffective. The circuit court did not reach the issues of whether Levy was Mansfield's agent and whether substituted service on an agent was permissible under § 801.11(1)(d) because, apparently, Mared did not raise them. The circuit court later dismissed Mared's action for lack of personal jurisdiction over Mansfield.

¶ 8. Mared appealed, and the court of appeals reversed. The court of appeals concluded Wis. Stat. § 801.11(1)(d) permitted substituted service on a natural person's authorized agent. *Mared,* No. 03–0097, unpublished slip op., ¶ 12. The court further concluded that it was reasonable for Monsen to believe Levy was authorized to accept the summons for Mansfield. *Id.,* ¶ 19. Thus, the court of appeals upheld the circuit court's implicit finding that Levy was Mansfield's agent. Although Mansfield submitted an affidavit asserting Levy was not his agent and that he did not authorize Levy to accept process, the court of appeals determined the affidavit was conclusory and could not disprove Monsen's reasonable belief that Levy was authorized to

requested, he would appear in court to testify. Although the affidavit related to an issue not before us, we note that the affidavit does not establish Mansfield authorized Levy to accept service on Mansfield in his individual capacity.

accept service on behalf of Mansfield. *Id.,* ¶¶ 16, 19. Mansfield seeks review of that portion of the court of appeals' decision.

## II

¶ 9. Granting, and granting relief from, a default judgment rests within the circuit court's discretion. *Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc.,* 2002 WI 66, ¶ 63, 253 Wis. 2d 238, 646 N.W.2d 19; *Holman v. Family Health Plan,* 227 Wis. 2d 478, 483, 596 N.W.2d 358 (1999). "A circuit court properly exercises its discretion when it considers the relevant facts, applies the correct law, and articulates a reasonable basis for its decision." *National Auto Truckstops, Inc. v. DOT,* 2003 WI 95, ¶ 12, 263 Wis. 2d 649, 665 N.W.2d 198 (citations omitted). If the circuit court decision involves a question of law, " 'we review the question of law de novo and reverse if the exercise of discretion is based on an error of law.' " *Paige K.B. v. Steven G.B.,* 226 Wis. 2d 210, 225, 594 N.W.2d 370 (1999) (citations omitted).

¶ 10. "The service of a summons in a manner prescribed by statute is a condition precedent to a valid exercise of personal jurisdiction." *Danielson v. Brody Seating Co.,* 71 Wis. 2d 424, 429, 238 N.W.2d 531 (1976). "Whether service of a summons is sufficient to obtain personal jurisdiction over a defendant involves the interpretation and application of a statute to undisputed facts and is reviewed as a question of law." *Useni v. Boudron,* 2003 WI App 98, ¶ 8, 264 Wis. 2d 783, 662 N.W.2d 672. The purpose of statutory interpretation is to determine what a statute means so that it may be given its full, proper, and intended effect. *State ex rel.*

*Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We begin with the statute's language. *Id.*, ¶ 45. Generally, language is given its common, ordinary, and accepted meaning. *Id.* If the meaning is plain, we ordinarily stop the inquiry. *Id.* Further, we consider language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. If this process yields a plain meaning, then there is no ambiguity and the statute is accordingly applied. *Id.*

### III

¶ 11. The first issue is whether Wis. Stat. § 801.11(1)(d) generally allows service on a natural person's agent. That section provides:

> A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:
>
> . . . .
>
> (d) In any case, by serving the summons in a manner specified by any other statute upon the defendant or upon an agent authorized by appointment or by law to accept service of the summons for the defendant.

Mansfield argues the phrase "any other statute" plainly modifies both "upon the defendant" and "upon an agent." Thus, Mansfield interprets the statute to allow service (1) by serving the summons in a manner specified by any other statute upon the defendant; or (2) by serving the summons in a manner specified by any other statute upon an agent authorized by appointment or law to accept service. We disagree.

¶ 12. As did the court of appeals, we read this section as clearly providing a distinct ground for effectuating service upon "an agent authorized by appointment or by law to accept service of the summons for the defendant." From the statute's face, we do not interpret Wis. Stat. § 801.11(1)(d) as requiring service on an agent to be linked to "any other statute." Thus, we read the statute as providing the following two grounds for carrying out service: (1) by serving the summons in a manner specified by any other statute upon the defendant; or (2) by serving the summons upon an agent authorized by appointment or by law to accept service of the summons for the defendant.

¶ 13. Our reading does not break new ground. On several different occasions, this court has commented on what is now Wis. Stat. § 801.11(1)(d) and arrived at the same conclusion. In *Punke v. Brody,* 17 Wis. 2d 9, 14, 115 N.W.2d 601 (1962), this court viewed the predecessor to § 801.11(1)(d), Wis. Stat. § 262.06(1)(d) (1959),[5] as allowing "service upon an agent authorized by appointment to accept service of summons for the defendant" without referring to "any other statute." There, Punke initiated an action against Brody, an

---

[5] Wisconsin Stat. § 262.06(1)(d) (1959), is textually identical to § 801.11(1)(d). Section 262.06(1)(d) provided:

A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 262.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:

. . . .

(d) In any case, by serving the summons in a manner specified by any other statute upon the defendant or upon an agent authorized by appointment or by law to accept service of the summons for the defendant.

360

out-of-state resident, and served the summons and complaint on Nathan Altman, "Agent for Harry Brody," in Wisconsin. *Id.* at 10. This court concluded that service on Brody's agent was defective because the service statute at that time, Wis. Stat. § 262.08(3) (1953),[6] required either "a direct and actual delivery of the papers to the defendant himself by the one making service," or "le[aving] [the papers] at defendant's usual place of abode in the presence of a competent member of the family at least fourteen years old." *Id.* at 11–12. At that time, there was no provision which provided for substituted service on a natural person's agent.

¶ 14. In its later discussion, and particularly important here, the *Punke* court observed that the recently enacted Wis. Stat. § 262.06(1)(d) (1959), now Wis. Stat. § 801.11(1)(d), "although inapplicable to this case, expressly authorizes service upon an agent authorized by appointment to accept service of summons for the defendant." *Id.* at 14. The court did not bind this provision to "any other statute."

¶ 15. This court returned to what is now Wis. Stat. § 801.11(1)(d) four years later in *Howard v. Preston,* 30 Wis. 2d 663, 668, 142 N.W.2d 178 (1966), and again viewed subsection (1)(d)'s agency provision in

---

[6] Wisconsin Stat. § 262.08(3) (1953) read:

For personal service or its equivalent, the summons, and the accompanying complaint or notice aforesaid, if any, shall be served by delivering a copy thereof as follows:

. . . .

(3) In all other cases by delivering within the state a copy thereof to the defendant personally; or, if not found, by leaving within the state a copy thereof at his usual place of abode in the presence of some competent member of the family at least fourteen years of age, who shall be informed of the contents thereof.

361

isolation from "any other statute." In *Howard,* a process server personally delivered a summons to the plaintiff's husband after the husband purportedly represented to the server he would accept service on behalf of his wife, the plaintiff. *Id.* at 665–67.

¶ 16. As will be discussed more in depth in connection with the next issue, this court concluded the husband's authority to accept process had not been established. What is significant here, however, was that the *Howard* court, as did the *Punke* court, read the agency clause in what is now Wis. Stat. § 801.11(1)(d) apart from "any other statute." *Howard,* 30 Wis. 2d at 668. The court isolated subsection (1)(d) to "provide[] for service of a summons upon an agent authorized by law to accept service of the summons for the defendant."[7] *Id.*

¶ 17. Consistent with *Howard,* and underlying this court's decision in *Fontaine v. Milwaukee County Expressway Commission,* 31 Wis. 2d 275, 279, 143 Wis. 2d 3 (1966), was the acceptance that agency service under what is now Wis. Stat. § 801.11(1)(d) was not joined by "any other statute." In that case, attorneys who represented Fontaine in a matter before the condemnation commission accepted, as Fontaine's attorneys, a notice of an appeal from the commission to the

---

[7] This court in *Howard* also suggested that a principal's ratification of the agent's acceptance of service would satisfy Wis. Stat. § 801.11(1)(d). *See Howard v. Preston,* 30 Wis. 2d 663, 668–69, 142 N.W.2d 178 (1966) ("Even if [the husband] did not have authority to admit service of the summons for his wife when he said he would, such exercise of authority might have been ratified by the [wife]. But there is no proof of such ratification upon which to estop the [wife]." (citations omitted)). As ratification is not before this court in this case, we leave resolution of that issue for a later day.

circuit court. *Id.* at 276. At issue was whether the attorneys were Fontaine's agents for purposes of accepting service under what is now § 801.11(1)(d). *Id.* at 278. The court concluded they were, and in so doing reasoned the attorneys' "prior representation [of Fontaine] can be a factor in determining whether an agency had been created which enabled her attorneys to accept process under sec. [801.11(1)(d)]." *Id.* at 279.

¶ 18. The court's conclusion was not tied to "any other statute" that allowed service upon an individual's agent. Indeed, the court had already concluded that a separate statute that allowed for service on an attorney who made an appearance in an "action or proceeding," Wis. Stat. § 269.37 (1965),[8] was inapplicable because the matter before the condemnation commission was neither an action nor a proceeding. *Id.* at 278. Consequently, the court's resolution of the appeal stemmed solely from what is now Wis. Stat. § 801.11(1)(d).

¶ 19. Several years later, in *Miller v. Smith,* 100 Wis. 2d 609, 619, 302 N.W.2d 468 (1981), this court, for the first time, explicitly severed the two clauses in Wis. Stat. § 801.11(1)(d) and attributed the "any other statute" language solely to service upon a defendant. In *Miller,* this court concluded that a John Doe complaint against an unknown state employee had to be served pursuant to Wis. Stat. § 801.11(1) to obtain personal jurisdiction over the unknown employee before a default judgment could be issued. Emphasizing that the

---

[8] Wisconsin Stat. § 269.37 (1965) stated:

When a party to an action or proceeding shall have appeared by an attorney the service of papers shall be made upon the attorney. When a defendant shall not have appeared in person or by attorney service of notice or papers in the ordinary proceedings in an action need not be made upon him unless he be imprisoned for want of bail.

plaintiff had not argued the service on the attorney general constituted agency service under subsection (1)(d),[9] this court stated:

> Sec. 801.11(1), Stats., governs the manner in which a court may obtain personal jurisdiction over an individual. Under this provision, service upon an individual may only be obtained by: (1) personally serving the summons upon the defendant; (2) leaving a copy of the summons at the defendant's usual place of abode with a member of the family who is competent, at least 14 years of age, and informed of the contents; (3) publication and mailing (mailing may be dispensed with if the post office address cannot be ascertained with reasonable diligence); or (4) *upon an agent authorized to accept service or in accord with any other statute specifying a manner of service upon an individual defendant.* (Emphasis added).

*Id.* at 619. Thus, this court understood subsection (1)(d) as providing two distinct grounds for effectuating service, with only service on the defendant being modified by "any other statute."

¶ 20. Therefore, from the time of Wis. Stat. § 801.11(1)(d)'s enactment nearly half a century ago, this court has recognized that service on a natural person's agent under Wis. Stat. § 801.11(1)(d) constitutes an altogether independent ground to effectuate service on a natural person. Admittedly, the cases above expressed an understanding of subsection (1)(d) without scrutinizing the statute's language. Either of two

---

[9] Wisconsin Stat. § 801.11(3) (1979) provided for the service of a summons and complaint upon the state as follows:

by delivering a copy of the summons and of the complaint to the attorney general or leaving them at the attorney general's office in the capitol with an assistant or clerk.

364

conclusions can be drawn from this: (1) all of the cases are merely premised on an assumption, possibly false, that "any other statute" does not modify the agency provision; or (2) a detailed construction of subsection (1)(d) was unnecessary because it was facially clear to the litigants and to this court that the agency provision does not require authorization from "any other statute." We affirm the latter conclusion here.[10]

IV

¶ 21. The second issue involves what "an agent authorized by appointment" means in Wis. Stat. § 801.11(1)(d). Mansfield takes issue with the court of appeals seeming conclusion that this phrase includes

[10] In addition to our previous case law, the Wisconsin treatises have uniformly accepted that Wis. Stat. § 801.11(1)(d) allows service on an agent who is authorized to accept service without reference to "any other statute." *See* Jay E. Grenig & Daniel D. Blinka, *Wisconsin Civil Rules Handbook,* § 801.11:3, at 47 (2003 ed.) ("[Wis. Stat. § 801.11(1)(d)] permits service of a summons in any manner provided by special statutes authorizing the exercise of personal jurisdiction. Paragraph (d) also gives the process server the option of serving an 'agent authorized by appointment or by law to accept service of the summons for the defendant.' "); *see also* 3 Jay E. Grenig, *Wisconsin Practice: Civil Procedure,* § 111.6, at 120 (3d ed. 2003) ("Subsection (1), Paragraph (d) expressly permits service of a summons in any manner provided by special statutes which authorize the exercise of personal jurisdiction. Paragraph (d) also gives the process server the option of serving an 'agent authorized by appointment or by law to accept service of the summons for the defendant.' "); John E. Conway and Daniel O. Bernstine, *Wisconsin and Federal Civil Procedure,* § 2.07 (1986) ("In the case of a natural person, service may be personal, substituted (on an agent, such as a member of the family at defendant's abode or on an agent appointed by the defendant or by law for service), or by publication.").

"apparent authority."[11] He argues the phrase "autho-

[11] As already noted, the court of appeals concluded that the evidence was sufficient to support a finding that Levy was Mansfield's agent because the process server reasonably relied on Levy's representations that he was authorized to accept the summons for Mansfield. *Mared,* No. 03–0097, unpublished slip op., ¶ 19.

The court of appeals also relied on *Fontaine v. Milwaukee County Expressway Commission,* 31 Wis. 2d 275, 280, 143 N.W.2d 3 (1966), as requiring "a *prima facie* showing of agency, and a lack of proof to the contrary, for service to be proper under Wis. Stat. § 801.11(1)(d)." *Mared,* No. 03–0097, unpublished slip op., ¶ 15. *Fontaine,* however, involved "special circumstances," and, accordingly, its evidentiary framework for establishing agency is confined to those circumstances.

As briefly touched on before, *Fontaine* concerned when attorneys could accept service as agents of their clients. This court held that "[w]hen an attorney-at-law formally acknowledges the receipt of a document as an attorney on behalf of a client, it may be presumed (in the absence of contradiction) that he was authorized by the client to accept it." *Id.* at 279. Thus, "when an attorney acknowledges receipt of delivery *as an attorney* on behalf of a client, the legend itself raises a *prima facie* case of valid service. If there were in fact no authority, proof thereof must be offered." *Id.* at 280 (emphasis in original). Because Fontaine did not testify that the attorneys did not have authority to accept service for her, the court concluded the prima facie showing of agency service under now Wis. Stat. § 801.11(1)(d) was sufficient.

As this court observed in *Gangler v. Wisconsin Electric Power Company,* 110 Wis. 2d 649, 657, 329 N.W.2d 186 (1983), "it is well-accepted, black-letter law that an attorney is not authorized by general principles of agency to accept on behalf of a client service of a process commencing an action." Nevertheless, this court held "that when notice of appeal is given to the attorney who represented a party in the condemnation proceedings and when 'special circumstances' are present, the circuit court has jurisdiction to proceed." *Id.* at 658. The court noted

rized by appointment" requires a showing of actual authority. We agree with Mansfield.

¶ 22. Before turning to our analysis, we pause to distinguish apparent authority from actual authority. Apparent authority stands in contrast to actual authority. Restatement (Second) of Agency § 7 cmt. c (1958). On the one hand, apparent authority binds a principal to acts of another who reasonably appears to a third person to be authorized to act as the principal's agent, because of acts of the principal or agent if the principal had knowledge of those acts and acquiesced to them. *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis. 2d 188, 203, 423 N.W.2d 828 (1988). Thus, because apparent authority stems from a third party's reasonable observations, it "is not necessarily coincidental with authority." Restatement (Second) *supra* § 8 cmt. e.

¶ 23. On the other hand, actual authority "is the power of the agent to do an act . . . on account of the principal which, with respect to the principal, he [or she] is privileged to do because of the principal's mani-

---

*Fontaine* represented one of those "special circumstances," that is "when an attorney at law formally acknowledges the receipt of a document as an attorney on behalf of a client." *Id.* (quoting *Fontaine*, 31 Wis. 2d at 280).

Thus, *Fontaine's* discussion regarding a prima facie showing of agency represents "special circumstances" for establishing an attorney as a client's agent under Wis. Stat. § 801.11(1)(d). Accordingly, we confine *Fontaine's* applicability. However, we note that Mansfield argues that we should overturn *Fontaine* because, he asserts, the legislature has since enacted Wis. Stat. § 801.14(2) to prohibit service of a summons on an attorney. This issue is not squarely before us; hence, we leave it for a later day.

festations to him [or her]." *Id.* at § 7 cmt. a. A third person's reasonable observations of an agent's authority have no bearing on determining the scope of an agent's actual authority. Wisconsin Stat. § 801.11(1)(d) requires actual authority for the following three reasons.

A

¶ 24. Compared to other service of summons statutes, Wis. Stat. § 801.11(1)(d) does not contain any variations of the word "apparent." *See, e.g.,* § 801.11(4)(b) (allowing service "[i]n lieu of [personally serving a political corporation' or other body politic's specified officers, directors, or agents], the copy may be left in the office of such officer, director or managing agent with the person who is *apparently in charge* of the office.") (emphasis added), *and* Wis. Stat. § 801.11(5)(a) (allowing service "[i]n lieu of [personally serving the summons upon an officer, director, or managing agent], the copy may be left . . . with the person who is *apparently in charge* of the office.") (emphasis added). Thus, were we to agree that apparent authority satisfied § 801.11(1)(d)'s "authorized by appointment" standard, we would have to add the word "apparently" to modify "authorized by appointment." When § 801.11(1)(d) is viewed in context, it is clear that the legislature specifically omitted this language.[12]

---

[12] The court of appeals was concerned that "[i]f a process server cannot rely upon repeated confirmations from an individual regarding his or her authority to accept service on behalf of another individual, and a reasonable belief that that person is actually authorized to do so, the option of serving an individual's authorized agent would be rendered impractical and almost futile." *Mared,* No. 03–0097, unpublished slip op., ¶ 19. It is a valid concern, and one that may be correct, but the legislature is the appropriate body to rectify any such shortcom-

B

¶ 25. We find further support for the conclusion that "authorized by appointment" requires actual authority in *Punke* and *Howard.* As noted above, in *Punke,* a process server served the defendant's purported agent after the purported agent told the process server he was the defendant's agent and was authorized to accept service on the defendant's behalf. *Punke,* 17 Wis. 2d at 10. In the context of determining whether the defendant consented to jurisdiction by appointing an agent within this state, the court observed, "The circuit court made no finding that as a matter of fact [the defendant] authorized [the agent] to accept service for [the defendant]." *Id.* at 14. Although the process server testified that the agent stated he had authority to accept service, this court determined that "[a]n agent's authority may not be shown by testimony describing his declarations to third persons." *Id.* at 14.

¶ 26. Similarly, in *Howard,* 30 Wis. 2d at 668, this court reaffirmed that an agent's authority cannot be established by declarations made to third parties in context of what is now Wis. Stat. § 801.11(1)(d). Again, in that case, a process server personally served the defendant's husband after he stated he had authority to accept service for his wife. The process server testified accordingly, but the husband disputed the server's testimony and stated he never had authority from his wife to accept process on her behalf. *Id.* at 667. The trial

ings. *See State ex rel. United States Fidelity & Guaranty Co. v. Smith,* 184 Wis. 309, 316, 199 N.W. 954 (1924) ("It is not the function of the court to add language to a statute or to add exceptions because the statute may to the court seem unwise.").

court found the husband's testimony incredible and attributed the husband's acceptance of service to his wife. *Id.*

¶ 27. This court reversed, concluding that the process server's testimony failed to establish the husband had authority to accept service for his wife. *Id.* at 668–69. This court stated, "Under [now § 801.11(1)(d)], . . . it may be claimed [the husband] was the authorized agent of his wife. [The husband], however, testified he had no such authority or appointment." *Id.* at 668. The court also stated the record did not support a finding of authority, even though the process server testified that the husband indicated he could admit process for his wife. *Id.* As in *Punke,* the process server's reasonable belief regarding the purported agent's authority could not establish the agent's authority to accept service for the principal. *See id.*

¶ 28. Thus, in both *Punke* and *Howard,* this court precluded establishing authority through the testimony and perceptions of a third party. Because the hallmark of establishing apparent authority rests with the reasonable observations of third parties, these cases essentially foreclosed apparent authority as the appropriate standard for establishing an agent's authority to accept process.

C

¶ 29. Finally, we turn to Federal Rule of Civil Procedure 4(e)(2).[13] *See Ness v. Digital Dial Communications., Inc.,* 227 Wis. 2d 592, 602 n.9, 596 N.W.2d 365

---

[13] Rule 4(e)(2) reads:

Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States . . . by delivering a copy of

(1999) (acknowledging that we may consider analogous federal rules and case law to guide our interpretation of the Wisconsin Rules of Civil Procedure). Rule 4(e)(2) contains the same "authorized by appointment" language, and cases construing that provision have concluded "that an actual appointment for the specific purpose of receiving process normally is expected." 4A Wright and Miller, Federal Practice and Procedure § 1097.[14] For this reason:

> [C]laims by an agent of having authority to receive process or the fact that an agent actually accepts process is not enough to bind the defendant to the court's jurisdiction; there must be evidence that the defendant intended to confer that authority upon the agent in order to satisfy the terms of Rule 4(e)(2).

*Id.* (footnotes omitted.) Thus, federal procedural jurisprudence recognizes that actual authority, not apparent authority, is the proper standard. Although we are not

the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an *agent authorized by appointment* or by law to receive service of process. (Emphasis added).

[14] *See, e.g., Schultz v. Schultz,* 436 F.2d 635, 637, 639 (7th Cir. 1971) (requiring actual authority by appointment and recognizing that both *Punke v. Brody,* 17 Wis. 2d 9, 115 N.W.2d 601 (1962), and *Howard* are consistent with federal law); *Select Creations v. Paliafito America,* 830 F. Supp. 1223, 1234 (E.D. Wis. 1993) ("[T]he principal arising from Rule 4, Fed. R. Civ. P., [is] that, absent actual authority to act as an agent for the service of process, an agent is not authorized to accept service on behalf of her principal.")

bound by interpretations of federal statutes that are similarly worded, we find those interpretations to be persuasive.

■

¶ 30. Based on the statute's language in context, this court's prior decisions in *Punke* and *Howard,* and federal jurisprudence, we conclude that an agent's representations to a process server, regardless of the reasonableness of the process server's reliance on those representations, is insufficient to establish the agent's authority to accept service on the principal's behalf. In other words, apparent authority is insufficient to bind a principal to service on an agent. Wisconsin Stat. § 801.11(1)(d)'s "authorized by appointment" language, therefore, refers only to actual authority. We now focus on what actual authority means in § 801.11(1)(d)'s context.

## V

¶ 31. In *Skrupky v. Elbert,* 189 Wis. 2d 31, 43–44, 526 N.W.2d 264 (Ct. App. 1994), the court of appeals recognized that actual authority encompasses both express and implied authority. The court stated:

> Actual authority is express when found within the explicit agency agreement itself, that is, the communication or contract between the principal and the agent. Actual authority is implied when the agent, not the third party, reasonably believes he or she has authority as a result of the action of the principal. An agent has the implied authority to do such acts as are usual, appropriate, necessary or proper to accomplish the purpose and objects of the agency.

*Id.* at 44 (citations omitted).[15] Mansfield urges this court to conclude the actual authority must be express, whereas Mared claims that implied actual authority will suffice. We agree with Mansfield.

¶ 32. Turning to the statute's language, Wis. Stat. § 801.11(1)(d) allows service "upon an agent authorized by appointment or by law to accept service of the summons for the defendant."[16] From the statute's face, it is evident that the source of an agent's authorization to accept service stems from the principal's appointment. "Appointment," however, is not defined in the statute. "If a word is not defined in the statute, our next recourse has normally been to use a recognized dictionary to determine the common and ordinary meaning of the word." *State v. Polashek,* 2002 WI 74, ¶ 19, 253 Wis. 2d 527, 646 N.W.2d 330. The common dictionary definition of "appointment" means the "designation of a person to hold a nonelective office or perform a function." *Webster's Third New Int'l Dictionary* 105 (unabr. 1986). *Black's Law Dictionary* is in accord, where it

---

[15] The court of appeals also directed attention to the Restatement (Second) of Agency § 7 cmt. c (1958), which similarly provides:

> It is possible for a principal to specify minutely what the agent is to do. To the extent that he does this, the agent may be said to have express authority. But most authority is created by implication. . . . These powers are all implied or inferred from the words used, from customs and from the relations of the parties. They are described as "implied authority."

*Skrupky v. Elbert,* 189 Wis. 2d 31, 44 n.5, 526 N.W.2d 264 (Ct. App. 1994).

[16] The concept of agency service "authorized by . . . law to accept service of the summons for the defendant" is not an issue in this case.

373

defines "appointment" as "[t]he act of designating a person, such as a nonelected public official, for a job or duty." *Black's Law Dictionary* 96 (7th ed. 1999).

■■

¶ 33. After synthesizing these definitions, it is clear that Wis. Stat. § 801.11(1)(d) requires the principal to designate the agent to perform the function, job, or duty of accepting service. We conclude that "designating the agent to perform the function of accepting service" is simply another way of saying the principal must establish an explicit agency agreement. *See Skrupy,* 189 Wis. 2d at 43. While such a designation need not be in writing, it must be set forth in clear and unambiguous terms. In other words, the agent must have actual express authority.

¶ 34. Our conclusion is bolstered by the policy grounding service, namely "to ensure that a defendant receives reasonable notice of the action." 2 Callaghan's Wisconsin Pleading and Practice § 14.3, at 228 (4th ed. 2002). Personal service is the preferred manner of service because it presents the greatest likelihood that the defendant actually receives notice of the action. *See id.* However, because "[t]he very essence of substituted service is that some person or entity receives process on another's behalf," *Leonard v. Cattahach,* 214 Wis. 2d 236, 247, 571 N.W.2d 444 (Ct. App. 1997), substituted service diminishes the certainty of a defendant receiving notice. Construing the authorization under Wis. Stat. § 801.11(1)(d) as requiring actual express authority not only encourages plaintiffs to personally serve defendants, it also preserves the policy of ensuring that a defendant receives notice of an action by imputing

notice through an agent only in cases where the defendant has actually ceded the preferred manner of personal service.[17]

¶ 35. Turning to the facts of this case, the court of appeals ably summarized Mared's evidence as follows:

> [Monsen] testified that he walked into the facility and told the receptionist that he had some court documents that he needed to serve on Mansfield. She asked him to wait a moment and made a phone call. Shortly thereafter, he was approached by a man who identified himself as "Mr. Levy." According to the process server's testimony, he told Levy that he had court documents that he needed to serve on Mansfield. Levy told the process server that he was authorized to accept service of those papers. The process server reiterated that he needed to serve Mansfield personally, and Levy told him that he was authorized to accept them on Mansfield's behalf. After that exchange, he left the copies of the summons and complaint with Levy . . . .

*Mared,* No. 03–0097, unpublished slip op., ¶ 15.

¶ 36. Mared's evidence does not support a finding of actual express authority. The only evidence that is germane to establishing Levy's authority, evidence which at this point is uncontroverted, comes from Mansfield's affidavit, wherein Mansfield stated that Levy was not his agent, let alone an agent authorized to accept summons on his behalf. We do recognize that while personal service was an issue that was before the trial court, neither party argued, and the trial court did not consider, the propriety of agency service under Wis. Stat. § 801.11(1)(d). Because this is the first case that

---

[17] Absent specific authority by statute or rule that would define appointment to include actual implied service upon an agent, we decline the invitation to extend the rule in this fashion.

not only specifically addresses agency service but defines its scope, we remand this case to the trial court to determine whether Mansfield expressly provided Levy with actual authority to accept service of process from Monsen. The trial court can accept additional evidence in view of the fact that agency service was not previously argued. If Mared can establish that Mansfield entered into an explicit agency agreement with Levy for purposes of accepting service, then service was proper.[18]

## VI

¶ 37. In sum, we conclude that Wis. Stat. § 801.11(1)(d) creates an independent ground for substituted service on a natural person's agent. However, the agent must have actual express authority to receive service of a summons on the principal's behalf. Because Mared presented insufficient evidence to establish Levy's actual authority to accept service on Mansfield's behalf, we reverse the court of appeals' decision. We remand this matter to the trial court for further proceedings so that the trial court can determine whether Mansfield expressly authorized Levy to accept service of process.

¶ 38. We pause to recognize and emphasize that this case illustrates how risky it is to attempt to serve a defendant's agent. Because an agent must have actual express authority to accept service of summons under

---

[18] In *Punke,* 17 Wis. 2d at 14, this court required the trial court to find as a matter of fact that the principal authorized the agent to accept service for the principal. This factual determination must be made while bearing in mind that an agent's authority "may not be shown by testimony describing [the agent's] declarations to third persons." *Id.* Similarly, a disbelief of the agent's testimony does not supply the necessary proof. *Howard,* 30 Wis. 2d at 667.

Wis. Stat. § 801.11(1)(d), plaintiffs who choose to effectuate service under this provision had best proceed with extreme care, while being mindful that even the utmost care may not reveal the true scope of an agent's authority. Because the consequences for failing to strictly comply with the statutory rules of service are harsh, *see Bendimez v. Neidermire,* 222 Wis. 2d 356, 361, 588 N.W.2d 55 (Ct. App. 1998), plaintiffs should err on the side of caution by utilizing the more certain means for effectuating service under Wis. Stat. § 801.11(1)(a)-(c).

*By the Court.*—The decision of the court of appeals is reversed and the matter is remanded to the circuit court for further proceedings consistent with this opinion.