In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2519

THERMAL DESIGN, INCORPORATED,

*Plaintiff-Appellant*,

*v.*

AMERICAN SOCIETY OF HEATING, RE-
FRIGERATING AND AIR-CONDITIONING
ENGINEERS, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:07-cv-00765 — **William E. Callahan, Jr.**, *Magistrate Judge.*

ARGUED DECEMBER 6, 2013 — DECIDED JUNE 18, 2014

Before KANNE AND ROVNER, *Circuit Judges*, AND DURKIN,
*District Judge.*[*]

KANNE, *Circuit Judge.* Thermal Design alleged that the
American Society of Heating, Refrigerating and Air-Condition-
ing Engineers, Incorporated ("ASHRAE") violated Wisconsin

[*] Of the Northern District of Illinois, sitting by designation.

common law as well as the Wisconsin Deceptive Trade Practices Act.[1] Thermal Design claims that ASHRAE intentionally published a false and misleading thermal performance standard, which induced consumers to purchase Thermal's competitors' products in lieu of its own. The district court granted ASHRAE's motion to dismiss Thermal's Wisconsin Deceptive Trade Practices Act claim with prejudice. It then granted summary judgment to ASHRAE on Thermal's remaining claims, including the common law claim for unfair competition. For the following reasons, we affirm.

## I. BACKGROUND

ASHRAE is a standards development organization composed of hundreds of industry members, academicians, design professionals, and government officials. The standards provide guidelines for refrigeration processes and the design and maintenance of energy efficient buildings. Although some of ASHRAE's committee members are employed by businesses that sell products designed to meet the standards, the organization itself does not manufacture or sell any products.

Thermal Design is a manufacturer of insulation systems, known as "liner systems," for nonresidential metal buildings. Thermal's liner systems compete primarily with "over-the-purlin systems," which comprise about 90% of the current market for metal building roof insulation systems.

---

[1] Thermal asserted five causes of action against ASHRAE, including claims under the Lanham and Sherman Acts, but only challenges the district court's findings regarding the unfair competition and Wisconsin Deceptive Trade Practices Act.

Since 1999, ASHRAE has published Standard 90.1, titled "Energy Standard for Buildings Except Low-Rise Residential Buildings." Standard 90.1 describes how buildings ought to be constructed to increase energy efficiency. The issue in this case concerns the "building envelope," which consists of the building's roof, walls, floors, and fenestration. Appendix A to Standard 90.1 rates the energy efficiency of insulation assemblies through the use of U-factors, which measure heat transmission through a building part, i.e., a wall or a window; this in turn reflects the overall thermal efficiency of a particular structure.

Standard 90.1 has considerable influence in the commercial building industry and has been incorporated into federal and state law. In 2011, the Department of Energy determined that Standard 90.1 would be the national commercial building reference standard, which meant that within two years every state had to certify that it had adopted a commercial building code that is at least as stringent as Standard 90.1.

Until 2010, Standard 90.1 treated non-laminated metal building insulation assemblies, like Thermal's liner systems, differently from laminated metal building insulation assemblies, such as over-the-purlin systems. The latter systems were enumerated in the standard and therefore presumed to comply with the standard, whereas owners had to obtain special permission to install liner systems. Thermal alleges that representatives of the North American Insulation Manufacturer's Association ("NAIMA") and the Metal Building Manufacturers Association ("MBMA"), both of which have voting members on ASHRAE's Envelope Subcommittee that is instrumental in the development of the U-factors, procured

this result by providing inaccurate data that was used to calculate the U-factors. MBMA and NAIMA represent many of Thermal's competitors that produce over-the-purlin systems that compete directly with Thermal's liner systems. Thermal also claims that a NAIMA representative was aware that one of the U-factors in Appendix A was incorrect, but nonetheless voted in its favor.

In 2005 and 2006, Thermal engaged Oak Ridge National Labs to test the U-factors in Appendix A and discovered that they were incorrect. It reported these findings to ASHRAE, but ASHRAE disagreed and published Standard 90.1 as it originally appeared.

Thermal filed its first complaint against ASHRAE on August 24, 2007, alleging unfair competition and a violation of Wisconsin's Deceptive Trade Practices Act. Thermal contends that it was harmed by the inaccurate information in Standard 90.1 as metal building owners opted to purchase its competitors' over-the-purlin systems, which were presumed to be compliant under the standard, in lieu of its liner systems.

The district court dismissed the first complaint without prejudice, finding that, in regard to the Deceptive Trade Practices Act, Thermal had failed to allege that ASHRAE acted with the requisite intent under the statute to induce the public to buy the publication containing Standard 90.1. The court also dismissed the unfair competition claim for lacking the required specificity, finding that Thermal failed to articulate facts or practices that established ASHRAE as a competitor of Thermal.

Thermal then filed its first amended complaint, followed shortly by a second amended complaint to fix a non-substan-

tive error, on May 9, 2008, renewing its original claims and for the first time seeking redress under the Lanham Act. Thermal alleged that ASHRAE's publication purposefully mislead consumers with the intent to induce consumers to purchase the assemblies of its competitors. All three of these claims survived a motion to dismiss.

After a stay in proceedings during which the parties unsuccessfully attempted to settle the dispute, Thermal filed its third amended complaint, which added antitrust claims under federal and state law to its earlier causes of action. On ASHRAE's motion, the court dismissed the Wisconsin Deceptive Practice Act claim with prejudice. The court found that: (1) Thermal failed to allege that ASHRAE made any of the statements or representations "in connection with any commercial transaction"; (2) the Act does not provide a cause of action for non-parties; and (3) Thermal failed to plead causation because it did not allege that *it* relied on the allegedly false statements to its own detriment. The court also dismissed Thermal's Lanham Act claim, finding that ASHRAE does not compete with Thermal. The antitrust and unfair competition claims survived the 12(b)(6) motion to dismiss.

During discovery, Thermal filed a motion to compel the production of responsive documents within the possession, custody, or control of any member of ASHRAE's committees, subcommittees, or task groups. The court denied the motion and found that ASHRAE did not have sufficient control over the documents to warrant ASHRAE's being ordered to seek out and obtain the documents from its volunteer members, none of whom were employed by ASHRAE.

Following discovery, the district court dismissed the remaining claims on cross-motions for summary judgment. The court found that Thermal did not present any direct evidence of a conspiracy to restrain trade by any members of ASHRAE responsible for drafting Standard 90.1. It then found that ASHRAE could not be held liable "for unfair competition when it is not a competitor" and Thermal's claim was therefore "not a cognizable claim at common law."

Thermal now appeals the district court's ruling on its unfair competition and Wisconsin Deceptive Practices Act claims. It also appeals the decision to deny its motion to compel discovery. We will examine each in turn.

## II. ANALYSIS

### A. Standard of Review

We review a district court's decision to grant a motion to dismiss *de novo*. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). In order to survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving a motion to dismiss, we take all well-pled facts as true and then determine whether those factual assertions "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

We also review a grant of summary judgment *de novo*. *Wilson v. Cook County*, 742 F.3d 775, 779 (7th Cir. 2014). We will examine the record and all facts therein in the light most favorable to the non-moving party. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014).

Finally, a district court has broad discretion over pretrial discovery rulings, which we will review for an abuse of discretion. *Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004).

### B. Wisconsin Deceptive Trade Practices Claim

Thermal Design alleges that ASHRAE violated the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, by publishing faulty performance U-factors in Standard 90.1 and that this conduct was intended to induce consumers to buy Thermal's competitors' products. To assert a claim under the act, Thermal must allege three elements: "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) that the representation was untrue, deceptive or misleading, and (3) that the representation caused the plaintiff a pecuniary loss." *Novell v. Migliaccio*, 749 N.W.2d 544, 552 (Wis. 2008) (internal quotation marks omitted).

Thermal's complaint alleges that two of the six members of the Envelope Subcommittee—who were acting as agents of ASHRAE rather than for their own employers—intentionally skewed the U-factors in order to benefit over-the-purlin systems. This in turn caused Thermal to suffer a pecuniary loss. Yet the purpose of section 100.18 is to "protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to *promote the sale of a product*." *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 720 N.W.2d 507, 516 (Wis. Ct. App. 2006) (emphasis added) (quoting *State v. Automatic Merch'rs of Am., Inc.*, 221 N.W.2d 683, 686 (Wis. 1974)); *see also Novell*, 720 N.W.2d at 550 ("This court and the court of appeals have made clear that the purpose of § 100.18 is to deter sellers from making false and misleading representations in order to

protect the public.”). More simply put, section 100.18 “applies by its terms to *commercial transactions*.” *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1083 (W.D. Wis. 2008) (emphasis added). ASHRAE is not in the business of selling insulation systems such that it would benefit from Standard 90.1; it is merely a standards-setting organization comprised of numerous members that have an interest in the standards themselves. Moreover, nowhere in the 200 pages published by ASHRAE is it suggested that consumers choose one product over another. ASHRAE’s actions were not part of a commercial transaction.

Thermal’s interpretation of the act would render liable any standards-setting organization so long as a manufacturer could show that it lost sales as a result of allegedly inaccurate technical data. Nothing in the act supports such a broad understanding. Accordingly, its Deceptive Trade Practices Act claim must fail.

### C. Unfair Competition

Interestingly, Thermal chose to sue ASHRAE rather than the alleged culprits of the misrepresentation, i.e., the representatives of NAIMA and MBMA that influenced and benefitted from any wrongdoing. Thermal contends that the representatives acted as agents of ASHRAE in misrepresenting and distorting the figures promulgated in Standard 90.1. This in turn interfered with Thermal’s prospective contracts with customers. Thus, Thermal’s complaint depends on the assumption that the NAIMA and MBMA representatives were acting as agents of ASHRAE while working on Standard 90.1.

In support of its proposition, Thermal cites the Supreme Court’s decision in *Am. Soc. of Mech. Eng’rs, Inc. v. Hydrolevel*

*Corp.*, 456 U.S. 556, 565–66 (1982), which held that a standards-setting organization, the American Society of Mechanical Engineers ("ASME"), could be liable "when their agents act with apparent authority" and commit tortious conduct. Apparent authority is "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." *Id*. at 566, n. 5 (citing Restatement (Second) of Agency § 8 (1957)). One of ASME's secretaries had written a letter that in effect declared Hydrolevel's product unsafe. This letter was disseminated throughout the market by Hydrolevel's competitors who were able to deter potential customers from choosing Hydrolevel's product by using the ASME letter to show that it was unsafe. The Court found ASME liable because it cloaked its members—Hydrolevel's competitors—with apparent authority and enabled them to hinder Hydrolevel's competitive threat. *Id.* at 570–71 ("When it cloaks its subcommittee officials with the authority of its reputation, ASME permits those agents to affect the destinies of businesses and thus gives them the power to frustrate competition in the marketplace.").

*Hydrolevel* is markedly different than the case here, as there is no indication that the NAIMA and MBMA committee members were acting with apparent authority from ASHRAE. Apparent authority binds "a principal to acts of another who reasonably appears to a third person to be authorized to act as the principal's agent, because of acts of the principal or agent if the principal had knowledge of those acts and acquiesced to them." *Mared Indus., Inc. v. Mansfield*, 690 N.W.2d 835, 844 (Wis. 2005). But nothing here suggests that ASHRAE conferred

any sort of authority on its committee members. Quite the contrary. Thermal has not alleged, nor presented any facts that might suggest, that ASHRAE exercised any control or delegated any degree of authority to these members such that a reasonable person would believe that an agency relationship existed. The NAIMA and MBMA representatives were simply voting members on ASHRAE's subcommittee that helped develop Standard 90.1. Moreover, nowhere does Thermal argue that the committee members undertook these actions with the consent or knowledge of ASHRAE. Accordingly, ASHRAE cannot be held liable for the alleged acts of its committee members and Thermal's unfair competition claim must fail.

### D. Motion to Compel

Thermal also challenges the district court's decision to deny its motion to compel discovery. Our review of a district court's handling of a discovery matter is "necessarily deferential" and we will only overturn if we find an abuse of discretion. *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1052 (7th Cir. 1998).

Thermal sought discovery of numerous records from ASHRAE committee members. It contends that the documents, though not in ASHRAE's possession, were nonetheless in its control and were therefore discoverable under Federal Rule of Civil Procedure 34(a). Thermal believes that ASHRAE had control over the documents of its agents to compel discovery. We disagree. The district court found that Thermal's evidentiary submissions failed to prove ASHRAE had *sufficient* control over the documents so as to warrant the motion to compel discovery. *See Dexia Credit Local v. Rogan*, 231 F.R.D.

538, 542 (N.D. Ill. 2004) (On the issue of control, "the test is whether the party has a legal right to obtain [the evidence]." (quotation marks omitted)). The court considered Thermal's request to produce the documents but found that Thermal did not show that ASHRAE had adequate control over the documents to compel discovery. Moreover, after more than five years of discovery, the court found that discovery had reached its logical end, a finding that we give substantial discretion. *Corley*, 142 F.3d at 1052 ("District judges enjoy broad discretion in settling discovery disputes and in delimiting the scope of discovery in a given case."). We find no abuse of discretion.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision on all three of Thermal Design's claims.