STATE of Wisconsin, Plaintiff-Respondent,

v.

Edward W. FISHER, Defendant-Appellant.†

Court of Appeals

*Nos. 2004AP1289–CR, 2004AP2488–CR. Submitted on briefs April 28, 2005.—Decided June 15, 2005.*

2005 WI App 175

(Also reported in 702 N.W.2d 56.)

† Petition to review denied 8-25-05.

434

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eileen Miller Carter* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. Edward W. Fisher appeals from a judgment of conviction pursuant to WIS. STAT. § 961.41(1)(cm)1. (1999–2000)[1] for delivering five or fewer grams of cocaine, a controlled substance, and an order denying his motion for postconviction relief. He essentially challenges the length of his sentence and the constitutional validity of certain conditions of extended supervision. We disagree with Fisher's various contentions. The circuit court properly considered the primary sentencing factors in arriving at the length of his sentence. Moreover, the conditions of supervision are unambiguous and reasonably related to his rehabilitative needs. We also reject the State's argument that WIS. STAT. § 302.113(7m)(e)1. requires Fisher to wait until the year before his release to supervision before challenging the condition of supervision. That statute applies where an individual seeks modification of an otherwise valid condition, not where he or she challenges its validity.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 2.   The criminal complaint states that on June 28, 2002, Fisher encountered an undercover detective working for the Kenosha County Controlled Substance Unit. Fisher climbed into the backseat of the detective's car, and upon receiving the detective's assurance that he was not the police, Fisher directed the detective to where Fisher had parked his van. Upon their arrival, Fisher instructed the detective to follow him in his van to an area called Model Market near the 2300 block of 54th Street. Fisher exited the van at that location, walked back to the detective's vehicle, and obtained from the detective sixty dollars to buy three bags of "rock," meaning crack cocaine. The detective promised to give Fisher twenty dollars when he returned with the drugs. Fisher surrendered his keys to the detective to assure him of his intent to return, walked back to the van, where he retrieved two children, and then continued walking. Fisher returned a short time later with three bags of crack cocaine in his mouth. The detective gave him a prerecorded twenty-dollar bill, which police found on his person when they arrested him. They also tested the three bags of contraband, which weighed .8 grams and tested positive for cocaine base.

¶ 3.   Fisher has a somewhat different version of what happened. He claims he ordered dinner at a restaurant, realized he was short of the bill by eighteen cents, and left for his girlfriend's house so he could obtain the eighteen cents. Fisher alleges he saw an acquaintance in the parking lot who summoned Fisher to talk with him and two people sitting in a car near him. All three supposedly assured Fisher that the occupants of the car were not police and asked Fisher to get them some cocaine. He claims he initially maintained that he was not a dealer but agreed to buy the drugs when they offered him twenty dollars. Fisher

admits he directed the driver to follow his van to Model Market, where Fisher thought he could find some cocaine, and that when they reached that area, Fisher stopped, surrendered his keys, and obtained sixty dollars from the driver for the three bags of cocaine. He states he left, returned, and got into the car, where he handed the driver three bags. He learned the driver and his passenger were undercover detectives when the driver told him he would look good in stripes and police squads surrounded the vehicle.

¶ 4. The State charged Fisher, and the court set bond. Fisher agreed to waive his preliminary hearing in exchange for dismissal of two penalty enhancers and subsequently pleaded no contest to the remaining charge, delivery of the controlled substance cocaine, in the amount of five grams or fewer.

¶ 5. On October 15, the circuit court imposed a twelve-year sentence with seven years of initial confinement and five years of extended supervision, to be served consecutively to any other sentence. The court made the following observations while explaining its rationale for the sentence imposed:

> The Court has read the pre-sentence investigation report, and obviously what pops out boldly . . . is that prior record beginning in 1980. The adult record goes on from there for a couple of pages, page-and-a-half. The defendant began his first prison term at age 21. He's now 43, and he's still in and out of prison. This will be his fifth period of incarceration.

> Mr. Fisher, you are quickly becoming an institutionalized man. You can't stand prosperity. When you are out, you're breaking the law, that with your background you should know there's no honor among thieves . . . . You thought you were dealing with a friend, and you weren't; but the distribution of drugs is

a very serious matter. While your attorney indicated it's just a small amount and it will cost hundreds of thousands of dollars to keep you [in confinement], when those drugs get distributed, it costs a lot of money to the community to take care of the people that have become addicted to deal with the same people because they commit crimes in order to get more money to buy more drugs; so it's not as simple as it may look.

The Court believes that based upon your prior record, the nature of this crime, that a prison [sentence] is in order . . . .

¶ 6. Fisher's extended supervision contained alcohol-related provisions. At the sentencing hearing, the court stated Fisher was not to consume any alcoholic beverages or to "go into any taverns or liquor stores or have any containers for alcoholic beverages in your residence." The judgment of conviction and the written "CONDITIONS OF EXTENDED SUPERVISION" form restates the conditions as follows. First, they admonish Fisher, "Do not possess or consume alcoholic beverages and do not have alcoholic beverages within the residence." Second, they command, "Do not be in taverns or on any premises licensed for the sale of intoxicating beverages, except restaurants and grocery stores."

¶ 7. Fisher sought postconviction relief. The circuit court denied his motion on September 14, 2004. Fisher appeals. Specifically, he argues that the circuit court erroneously exercised its discretion when it did not consider mitigating factors supporting a lighter sentence and disregarded Fisher's treatment needs. He also claims that the conditions of supervision, which forbid him to be in taverns or liquor stores, to consume alcohol, or to have containers for alcohol in his resi-

dence, violate his constitutional due process rights in that they are vague, overbroad, and lack any connection to his offense.

¶ 8.   We first turn to the conditions of supervision. The State contends, as a threshold issue, that we need not reach the merits regarding the conditions of supervision because Fisher prematurely brought his motion to modify those conditions. In support, the State cites Wis. Stat. § 302.113(7m)(e)1., which reads in pertinent part, "An inmate may not petition the court to modify the conditions of extended supervision earlier than one year before the date of the inmate's scheduled date of release to extended supervision . . . ." As additional support, it relies upon Wis. Stat. § 809.30(1)(c), which expressly defines "postconviction relief" to exclude appeals, motions, or petitions pursuant to § 302.113(7m).

¶ 9.   Whether or not these statutory provisions preclude Fisher from challenging his conditions of supervision requires us to determine whether Fisher seeks to modify the conditions within the meaning of Wis. Stat. § 302.113(7m)(e)1. This task requires us to construe and apply that statute, which raises questions of law that we review independently. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148 (1996) (statutory interpretation an issue of law); *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 17, 253 Wis. 2d 323, 646 N.W.2d 314 (application of legal standard to a set of facts a question of law). We give the words in a statute their common and ordinary meanings. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Where the meaning of the statute is plain, we begin and end with the statutory language. *Id.* Where the statute is open to multiple reasonable interpretations,

441

however, we may look to extrinsic evidence of legislative intent—such as the statute's scope, context, history, and purpose—to resolve the ambiguity. *See id.*, ¶¶ 46–48.

■

¶ 10.   We disagree with the State's application of Wis. Stat. § 302.113(7m)(e)1. The Wisconsin Statutes do not provide a relevant statutory definition of "modify," so we consult a dictionary to ascertain the plain meaning. *Mared Indus., Inc. v. Mansfield*, 2005 WI 5, ¶ 32, 277 Wis. 2d 350, 690 N.W.2d 835 ("If a word is not defined in the statute, our next recourse has normally been to use a recognized dictionary to determine the common and ordinary meaning of the word." (Citation omitted.)). Webster's Third New International Dictionary 1452 (unabridged 1993) provides several similar definitions of "modify," all of which contemplate a change in the form of some existing thing. Among these, it lists the following:   (1) "to make more temperate and less extreme"; (2) "to make minor changes in the form or structure of . . . alter without transforming"; and (3) "to make a basic or important change . . . ." Webster's Third New International Dictionary 1452 (unabridged 1993). We conclude that § 302.113(7m)(e)1. unambiguously applies only where an inmate seeks to make changes to conditions of supervision. Fisher does not seek merely to make changes to two contested conditions of his supervision; he wants to abolish them entirely.

¶ 11.   Even if we discerned some ambiguity in the statutory language, the legislative history of Wis. Stat. § 302.113(7m)(e)1. reveals that the drafters did not intend the statute to reach appeals seeking to invalidate a condition on constitutional grounds. On June 15, 1998, the legislature enacted 1997 Wis. Act 283, which

created the existing § 302.113. This act also created a criminal penalties study committee, directing the committee to submit a report in 1999 including any recommendations and proposed legislation. *See* 1997 Wis. Act 283, § 454(1)(f). The committee submitted its final report on August 31, 1999. The committee recommended the following new legislation:

> The Committee recommends that 1997 Wis. Act 283 be revised such that the judge have the authority to modify the conditions of [extended supervision]. At the time of sentencing, the judge may not be aware of all possible supervision options available at the end of a long period of confinement. The Committee believes that a supervisee should be able to petition for modification of ES conditions, but not before 1 year before the offender's confinement portion of his sentence is to end . . . .

Wisconsin Criminal Penalties Study Committee, Final Report, August 31, 1999, at 131. In response to this recommendation, the legislature enacted § 302.113(7m). *See* 2001 Wis. Act 109, § 395.

¶ 12.   We must read the committee's recommendation in context with the purpose of extended supervision. That purpose involves the dual goals of "advancing the public safety and offender rehabilitation." Wisconsin Criminal Penalties Study Committee, Final Report, August 31, 1999, at 19. In pursuing these objectives, each offender must participate in some combination of employment, education, treatment, and community services. *Id.* at 122. These services might include the use of alcohol, drug abuse, or job training programs, halfway houses, confinement beds, day reporting centers, employment, sex offender programming, and mental health care. *Id.* at 122, 125.

¶ 13. Obviously, the report's reference to "all possible supervision options" meant rehabilitation options of this sort. The committee was aware of the fact that new rehabilitative opportunities beneficial to the offender might become available at various points after sentencing and thought it best to wait until just one year prior to release to assess whether newer options met sentencing objectives better than the offender's original conditions of supervision. The court might, for example, modify a job-training condition in the original judgment to substitute a new program that offered employment opportunities in addition to job training. In such a case the employment-related conditions are simply being changed to include different programs. Nobody questions the legality of the original conditions; the issue is simply whether an alteration in the condition might be better.

¶ 14. The situation before us differs markedly. The legislative rationale of waiting until the court can prudently and timely weigh additional options newly available to the offender does not apply to constitutionally invalid conditions. Again, Fisher does not ask us to alter the conditions of his supervision by substituting new terms. He wants us to void them. If a condition of supervision violates the state or federal constitution, striking that condition is not a better option but a mandate. To impose a waiting requirement merely delays the inevitable.

■

¶ 15. We now address Fisher's constitutional challenges to the conditions of supervision on their merits. Fisher quotes the circuit court's oral decision, which forbids him to "go into any taverns or liquor stores or have any containers for alcoholic beverages in your residence." He claims that this condition is unconstitu-

tionally vague for two reasons. First, he claims that "taverns or liquor stores" can be read broadly enough to prohibit him from patronizing grocery stores and restaurants. Second, he asserts "containers for alcoholic beverages" is vague because it theoretically forbids him from possessing empty containers.

¶ 16. Fisher's contentions grossly misrepresent the record. Assuming the court's oral ruling contained some ambiguity, the written judgment of conviction and the conditions of extended supervision are crystal clear with respect to what conduct the conditions cover. *See Jackson v. Gray*, 212 Wis. 2d 436, 443, 569 N.W.2d 467 (Ct. App. 1997) (where oral pronouncement ambiguous, we may look to written judgment to ascertain circuit court's intent). Defense counsel conveniently fails to acknowledge either document. Both expressly and unambiguously exempt restaurants and grocery stores from the category of prohibited establishments. We deem Fisher's second argument equally lacking in merit. The conditions read, "Do not possess or consume alcoholic beverages and do not have alcoholic beverages within the residence." Empty containers obviously do not qualify as alcoholic beverages—although possessing such containers might strongly suggest a violation of the proscription against consuming alcohol.

¶ 17. Fisher next contends the conditions of supervision were overly broad and without a proper nexus to his offense, in violation of his constitutional rights to free association and privacy. Fisher concedes that to the extent these rights are implicated, we need not apply strict scrutiny. *See State v. Oakley*, 2001 WI 103, ¶¶ 16–21, 245 Wis. 2d 447, 629 N.W.2d 200 (standard of review for conditions of probation), *modified on other grounds*, 2001 WI 123, 248 Wis. 2d 654, 635 N.W.2d 760;

*State v. Koenig*, 2003 WI App 12, ¶ 7 & n.3, 259 Wis. 2d 833, 656 N.W.2d 499 (Ct. App. 2002) (applying authority applicable to propriety of probation conditions to conditions of extended supervision). We need only determine that "they are not overly broad and are reasonably related to the person's rehabilitation." *Oakley*, 245 Wis. 2d 447, ¶ 19 (citation omitted). A condition reasonably relates to the goal of rehabilitation when it assists the offender in conforming his or her behavior to the law. *Id.*, ¶ 21.

¶ 18. We reject Fisher's challenge. Fisher asserts the conditions are "overly broad because [they] afford[] no real or practical notice . . . as to what conduct is prohibited." To the extent his overbreadth challenge overlaps with his vagueness argument, we reject it. Moreover, we discern an adequate nexus between the conditions of probation and Fisher's rehabilitation. The presentence investigation report indicates that Fisher has a substance abuse problem. Offenders with drug problems often also have problems with alcohol consumption.

¶ 19. In fact, the PSI indicates that Fisher has experienced difficulties with alcohol abuse. He drank regularly and to the point of intoxication years before he reached the legal drinking age. Fisher also admitted to alcohol problems as an adult. He attributed the problems he had at one point in his life to depression related to his mother's death. Fifteen years later, in a PSI related to another offense, he cited his drug and alcohol problems as reasons for his criminal conduct. Moreover, he has twice been recommended for alcohol and other drug abuse programming. Given this history, the conditions of supervision reasonably serve rehabilitative purposes.

¶ 20. Fisher next contends that the circuit court erroneously exercised its discretion in imposing sentence when it failed to consider various mitigating factors and Fisher's rehabilitative needs. Sentencing lies within the circuit court's sound discretion, and we adhere to a strong policy against interference with such discretion. *State v. Mosley*, 201 Wis. 2d 36, 43, 547 N.W.2d 806 (Ct. App. 1996). We presume the circuit court acted reasonably unless the defendant can demonstrate unreasonableness based on the record. *Id.* The court must consider three primary factors in sentencing: (1) the gravity of the offense, (2) the character of the offender, and (3) the need for protection of the public. *State v. Harris*, 119 Wis. 2d 612, 623, 350 N.W.2d 633 (1984). In doing so, it may also take into account additional relevant factors. *Id.* at 623–24. The circuit court, in its discretion, decides how much weight to accord each factor. *State v. Jones*, 151 Wis. 2d 488, 495, 444 N.W.2d 760 (Ct. App. 1989). The record must reflect the exercise of discretion; the circuit court must articulate the basis for the sentence it imposes. *Harris*, 119 Wis. 2d at 623.

¶ 21. Fisher argues that the circuit court did not satisfy the mandate in *State v. Gallion*, 2004 WI 42, 270 Wis. 2d 535, ¶¶ 39, 76, 678 N.W.2d 197, that the court exercise its discretion on a "rational and explainable basis." We understand him to assert that the court should have explained with specificity the comparative weight it ascribed to each factor and exactly how these factors translated into a specific number of years.

¶ 22. We hold that Fisher is not entitled to this degree of specificity. *See id.*, ¶¶ 53–55 (rejecting Gallion's assertion that the court had to justify the specific number of years and specifically describe the

comparative weight of each factor). The evil *Gallion* sought to remedy was the mechanistic application of the three sentencing factors, in which a circuit court simply described the facts of the case, mentioned the three sentencing factors, and imposed a sentence. *Id.*, ¶¶ 26, 55. We perceive that the court was addressing what this court had also been seeing over the years in appeals involving sentencing discretion.

¶ 23.   Criminal defendants would argue that the circuit court had merely paid "lip service" to the three major sentencing considerations without actually discussing them in a way that related to the number of years imposed in prison. In particular, defendants complained that the circuit court gave short shrift to the character component and simply observed that the defendant's bad character weighed against him or her, that the offense was serious and the defendant had to be punished, and that a sentence in prison was therefore in order.[2] We read *Gallion* as saying that such mechanistic application of the sentencing criteria had to be stopped.

¶ 24.   We do not accept Fisher's contention that the circuit court's sentencing remarks personified the evils the *Gallion* court sought to remedy or his characterization of its rationale as merely a "dismissal [sic] view of those accused of drug use or dealing." Although the circuit court in this case did not have the benefit of *Gallion* and probably would have described its rationale with even greater specificity if it had, the reasoning it employed adequately satisfied the *Gallion* decision's criteria for proper sentencing. The court plainly consid-

---

[2] Defendants complained, for example, about sentencing decisions with explanations like the following: "Here are the facts . . . . In light of [fill in the three primary sentencing factors] . . . the court imposes the following sentence . . . ."

ered all three of the primary sentencing factors in light of the facts of Fisher's case. First, it prominently considered the gravity of the offense, observing that dealing even small amounts—as Fisher did—could have grave consequences to those who purchased the drugs and to the public, which foots the bill for crimes committed by those individuals and rehabilitating them once they become addicted.

¶ 25. The court also considered the needs of protecting the public when it described the evils drug dealing poses to the public and Fisher's recidivism. While it did not say the magic words, "protection of the public," that is clearly what it was referring to: this observation was, in part, a direct response to defense counsel's contention that the threat Fisher posed to the community was not worth the expenditure of public money to incarcerate him.

¶ 26. With regard to character, we strongly disagree with his assertions that "[c]haracter evidence was positive" and the court "completely disregarded character," instead focusing on criminal history. Fisher fails to acknowledge that a criminal record that spans over two decades *is* evidence of character. The court simply focused upon a major aspect of character that Fisher prefers to overlook.

¶ 27. Finally, the circuit court did not inappropriately ignore Fisher's treatment needs. Although rehabilitation is secondary to the three primary factors, which clearly supported the sentence meted out, *see Jones*, 151 Wis. 2d at 495 (court *may* appropriately consider "defendant's need for close rehabilitative control" as an additional consideration), the court did expressly consider this factor. It characterized Fisher as "an institutionalized man" who reoffended every time

he was out of jail. In doing so, the court clearly recognized that Fisher could not function as a productive and law-abiding member of the community and required the confines of a structured environment. It did not need to utter the magic word "rehabilitation."

¶ 28.   Moreover, Fisher's sentence provides for five years of extended supervision, which by its very nature is designed to serve rehabilitative objectives. The conditions imposed belie Fisher's contention that "[t]he court failed to . . . consider community based rehabilitative means" that would allow him to "test the efficacy of treatment . . . in a community where temptation existed." The alcohol-related conditions that are the subject of this appeal clearly address any alcohol problem. Other conditions prohibit the use or possession of controlled substances and provide that he must submit to random urine, breath, and drug screenings. He also must seek and maintain employment. All of these conditions serve rehabilitative purposes. If Fisher believes other treatment options would better meet his needs, he may move to modify the conditions of supervision one year prior to his release, pursuant to WIS. STAT. § 302.113(7m)(e)1. At that time, the circuit court, not this court, can reassess the available alternatives.

¶ 29.   We hold that Fisher did not prematurely seek review of the constitutional validity of the conditions of supervision. WISCONSIN STAT. § 302.113(7m)(e)1. simply does not apply to such challenges. His challenge fails on the merits, however. The circuit court properly considered the primary sentencing factors. Moreover, it imposed a sentence that adequately addressed Fisher's need for rehabilitation.

*By the Court.*—Judgment and order affirmed.