COURT OF APPEALS
DECISION
DATED AND FILED

February 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2022AP1620-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF730

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

SPENCER BRIAN LEWIS,

      DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  JEFFREY A. WAGNER, Judge.  *Affirmed*.

Before White, C.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Spencer Brian Lewis appeals the judgment of conviction and the circuit court's order denying his motion for resentencing.  Lewis

argues that the circuit court erroneously exercised its discretion because it failed to consider his rehabilitative needs when determining the sentence. We disagree and affirm the judgment and order.

## BACKGROUND

¶2      In 2018, Lewis pleaded guilty to two amended counts of second-degree reckless homicide by use of a dangerous weapon and one count of attempted armed robbery by use of force for the February 2017 shooting deaths of teenage brothers Trajan and Croshian Edwards. Lewis, a fourteen-year-old eighth grader at the time of the shooting, and his thirteen-year-old friend devised a plan to rob Trajan because they believed there would be marijuana and money in the home. Lewis brought his father's handgun and his accomplice brought a hammer. When Lewis produced the gun in the victims' living room, Trajan struggled with him for possession. Lewis shot Trajan at least twice before running towards the back door where he ran into Croshian. There was another struggle, and Lewis shot Croshian until the gun was empty. The victims' mother came into the living room when she heard shots fired and found Trajan bleeding. She then heard a shot from the back of the house and ran to find Croshian and Lewis struggling, Croshian on his back with Lewis on top of him. Croshian died at the scene, and Trajan died two days later at the hospital.

¶3      Lewis was originally charged in criminal court with two counts of first-degree reckless homicide by use of a dangerous weapon and one count of attempted armed robbery by use of force. Lewis sought "reverse-waiver" to the juvenile court but was unsuccessful. The State offered to reduce the charges to two counts of second-degree reckless homicide while armed and one count of attempted armed robbery. In exchange, Lewis would plead guilty to the amended charges,

2

waive any argument that he should be adjudicated as a juvenile, and agree that it was in the best interest of the public for him "to remain treated as an adult." Lewis agreed and pleaded guilty to the amended charges.

¶4 At the sentencing hearing, several of the victims' family members spoke, including the victims' mother who described the impact of her sons' deaths on her and her family and doubting that Lewis was remorseful and did not intend to kill anyone. She stated that Lewis "needs the maximum" sentence and asked the court to sentence him to "as much time as possible." The State recommended "substantial prison" for the two reckless homicide counts and asked that the circuit court consider the attempted armed robbery count as a way to impose additional extended supervision. The State also told the court that a reduction in the charges was "appropriate" despite the seriousness of the offenses because Lewis was only fourteen years old at the time the offenses were committed.

¶5 In its sentencing decision, the circuit court considered the severity of "taking the lives of two young kids," which was "unthinkable, unimaginable, disastrous, [and] horrific[.]" The court considered Lewis's character, finding that he was not "an average child because what child of your age would carry around a Glock, .40-caliber Glock with extra clips" if he did not intend to use it. The court also considered the rights of the victims' family, explaining that Lewis "took the lives of two kids," that their families were "never going to be able to watch them grow, watch them perhaps have a family, watch them finish school … because of [his] greediness[,]" and that Lewis had decided "to go over there and do the robbery with that gun [and] intimidate them in order to turn over their belongings[.]"

¶6 The court stated that it tailored the sentence to "fit the particular circumstances of the case and the individual characteristics" of Lewis, taking into

consideration that Lewis had just turned fifteen years old and that he was "giving up a significant amount of [his] life as a result of what occurred[.]" The court in deciding Lewis's sentence, stated that Lewis had "to be punished," taking into consideration his "age," any "remorse, repentance, cooperativeness," and his "need for close rehabilitative control." The court noted "[t]he results of the presentence investigation" showing that Lewis had no previous contacts with law enforcement, had no drug, alcohol, or mental health issues, and that Lewis had taken "a leadership role in" committing these crimes. The court also considered protection of the community, deterrence of Lewis and "others who may think of carrying these weapons of destruction and using them," and that Lewis's crimes "left a legacy of sadness[.]"

¶7 The court sentenced Lewis on the two counts of second-degree reckless homicide to consecutive sentences of seventeen years of initial confinement and eight years of extended supervision, explaining that they were consecutive because count two "involved a second victim." On the attempted armed robbery count, the court imposed a concurrent sentence. The court stated that its intent was for Lewis to "rehabilitate [himself] while incarcerated" and to "impose a substantial sentence for taking the lives of those two young individuals."

¶8 Lewis filed a motion for resentencing arguing that the court erroneously exercised its discretion because it did not adequately consider the primary sentencing factors or explain why the sentence it imposed was the minimum necessary to advance the court's sentencing goals. Lewis claimed that the court did not consider his young age and rehabilitative needs, nor did it explain "the general range of the sentence imposed," why the thirty-four years of confinement was the "minimum amount" that was "consistent with the protection of the public, the

4

gravity of the offense and [Lewis's] rehabilitative needs[,]" or why "a sentence of lesser duration could not accomplish those goals[.]"

¶9 The court entered a written decision and order denying Lewis's motion for resentencing. It noted that when a sentencing court exercises its discretion, it must impose "the minimum amount of custody or confinement which is consistent" with the sentencing factors, but it was "not required to explain why it did not impose other possible sentences." The court "[u]nderstandably" gave "great weight to the seriousness of the offenses" because the facts were "unthinkable, unimaginable, disastrous, [and] horrific, by taking the lives of two young kids." The victims' mother described that "her boys were her life," that Lewis, who had been "a frequent guest in her home, took everything from her," that she had observed Lewis "smirking in court" and "displaying little remorse," and "pleaded for a maximum sentence." Based on the severity of these offenses and the devastating impact on the victims' family, the court concluded that the "maximum sentence was a viable sentencing option given the horrific and utterly senseless level of violence displayed in this case[.]"

¶10 The circuit court explained in its postconviction decision, however, that it chose not to impose the maximum term of confinement of fifty-two and a half years after considering Lewis's young age, his "potential for rehabilitation," and other factors. Instead, it imposed "a significantly lower sentence" of thirty-four years on the three counts and made Lewis "eligible for release to extended supervision at age 48." Based on its application of the sentencing factors and the facts in the record, the court concluded that a "lesser sentence would have unduly depreciated the extreme gravity [and] seriousness of the offenses and failed to accomplish the court's sentencing goals[.]" Lewis appeals.

**DISCUSSION**

¶11    Lewis argues that the circuit court erroneously exercised its discretion because it failed to consider a mandatory factor when determining his sentence. Specifically, Lewis claims the circuit court never considered his rehabilitative needs and failed to explain why a sentence including thirty-four years of initial confinement was the minimum necessary to advance Wisconsin's sentencing goals.

¶12    When imposing a sentence, the circuit court must consider three primary sentencing factors: (1) the protection of the public; (2) the gravity of the offense; and (3) the character of the defendant. *State v. Gallion*, 2004 WI 42, ¶23, 270 Wis. 2d 535, 678 N.W.2d 197. The circuit court decides how best to weigh each of these factors and is charged with providing an explanation on the record for the sentence imposed, but "the exercise of discretion does not lend itself to mathematical precision." *Id.*, ¶¶39, 42, 49. The circuit court must impose the minimum sentence consistent with the gravity of the offense, the rehabilitative needs of the offender, and the need to protect the public, *id.*, ¶44, but it need not break down how each sentencing factor translates into a specific term of confinement when it explains its sentencing rationale, *State v. Fisher*, 2005 WI App 175, ¶¶21-22, 285 Wis. 2d 433, 702 N.W.2d 56. It remains within the sentencing court's "wide discretion" to determine which factors are the most relevant and "[t]he weight to be given each factor[.]" *State v. Stenzel*, 2004 WI App 181, ¶¶9, 16, 276 Wis. 2d 224, 688 N.W.2d 20. A defendant requesting resentencing bears the "heavy burden" of establishing by clear and convincing evidence that the circuit court erroneously exercised its discretion. *State v. Harris*, 2010 WI 79, ¶¶30, 66, 326 Wis. 2d 685, 786 N.W.2d 409.

¶13    When reviewing a circuit court's exercise of sentencing discretion, we are mindful of the consistent and strong policy against interference with the discretion of the circuit court in passing sentence because the circuit court is best suited to consider the relevant factors and the defendant's demeanor. *McCleary v. State*, 49 Wis. 2d 263, 281, 182 N.W.2d 512 (1971). We consider "the facts on record, and the [circuit] court's articulated reasoning in the sentencing transcript and the postconviction order[,]" *State v. Taylor*, 2006 WI 22, ¶21, 289 Wis. 2d 34, 710 N.W.2d 466, and we are "obliged to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained[,]" *McCleary*, 49 Wis. 2d at 282.

¶14    Given our standard of review, we conclude that the circuit court adequately articulated its sentencing rationale and properly considered the required factors. While Lewis acknowledges the circuit court's recitation of its obligation to consider the "need for close rehabilitative control," he argues that the only other mention of "rehabilitation" came after the court levied its sentence, telling Lewis, "Young man, you do your best. See how you can rehabilitate yourself while incarcerated." Our review of the record convinces us that, as the State correctly points out, the circuit court interwove its consideration of Lewis's character throughout its sentencing decision, including his age and rehabilitative needs. Ultimately, the circuit court gave "great weight to the seriousness of the offenses," but it cannot be said that the court did not consider Lewis's character, age, and rehabilitative needs.

¶15    Indeed, as the circuit court explained in its postconviction decision, the maximum sentence would have been warranted but for the court's consideration of Lewis's young age and potential for rehabilitation. Although the sentencing court believed that Lewis's character warranted some departure from the maximum

sentence, it concluded that its sentence was the minimum necessary to achieve Wisconsin's sentencing goals because a "lesser sentence would have unduly depreciated the extreme gravity [and] seriousness of the offenses and failed to accomplish the court's sentencing goals[.]" This adequately describes "the general range of the sentence imposed." *Gallion*, 270 Wis. 2d 535, ¶49.

¶16 Accordingly, we affirm the judgment of conviction and the circuit court's order denying Lewis's motion for resentencing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).