COURT OF APPEALS
DECISION
DATED AND FILED

September 30, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP1-CR**

Cir. Ct. No. 2020CF1348

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SUNNY SISAVANGONE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI and DAVID C. SWANSON, Judges. *Affirmed*.

Before Colón, P.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Sunny Sisavangone appeals from a judgment of conviction and an order denying his postconviction motion.[1]     On appeal, Sisavangone seeks a new sentencing hearing before a different judge on the grounds that the trial court was objectively biased and erroneously exercised its discretion at sentencing.  We reject Sisavangone's arguments and affirm.

## BACKGROUND

¶2     According to the criminal complaint, on March 31, 2020, Sisavangone and another man, Andrew,[2] got into an argument about a missing key.[3]  When Andrew attempted to leave in his truck, Sisavangone poured gasoline on Andrew and the truck, and lit the truck on fire.  When Andrew jumped out of the truck, his body caught on fire and he suffered severe burns.  The incident was caught on video.

¶3     Sisavangone was charged with: (1) arson of a property other than a building; and (2) attempted first-degree intentional homicide.  Subsequently, Andrew died from his injuries at the hospital, and the State filed an amended information changing the attempted homicide count to first-degree intentional homicide.

---

[1] The Honorable David L. Borowski presided over the plea and sentencing hearings in this case.  The Honorable David C. Swanson decided the postconviction motion.  We refer to Judge Borowski as the trial court and Judge Swanson as the postconviction court.

[2] Although Andrew is a homicide victim, we use a pseudonym to protect his family's privacy interests.  *See* WIS. STAT. RULE 809.86(3) & (4) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

[3] Sisavangone later discovered that someone other than Andrew took the key.

¶4      Sisavangone entered a guilty plea to one count of first-degree reckless homicide.  In exchange, the State agreed to dismiss and read-in the arson count, and to recommend thirty to forty years of initial confinement.

¶5      Prior to sentencing, the Department of Corrections filed a presentence investigation report (PSI) recommending that the court sentence Sisavangone to seven to nine years of initial confinement and three to four years of extended supervision.  The defense submitted a sentencing memorandum and a mental health evaluation from Dr. Deborah L. Collins.

¶6      At sentencing, the State played the video of the offense, and pursuant to the plea agreement, requested that the trial court impose thirty to forty years of incarceration.  The defense argued that the court should follow the PSI's recommendation of seven to nine years of initial incarceration and impose a term of extended supervision "a little bit longer than three years."  The defense emphasized that Sisavangone was a first-time offender without a history of anti-social behavior, accepted responsibility, was remorseful, and was "hardworking, willing to help."  The defense also noted that Sisavangone had "mental health issues coupled with substance abuse problems," which played a role in the offense.

¶7      The trial court sentenced Sisavangone to twenty-five years of initial confinement followed by ten years of extended supervision.  The court explained that in this case, punishment is a "significant portion" of the sentence because "[y]ou don't get to set people on fire and kill them[.]"  The court discussed the video of the offense, Sisavangone's mental health issues, his use of illegal substances, his acceptance of responsibility, his lack of a criminal record, and his work history.  The court found that the PSI's recommendation was inappropriate.

The court observed that Sisavangone was probably a "moderate to low" risk to reoffend, but "the gravity of this offense is off the charts."

¶8    Subsequently, Sisavangone filed a postconviction motion requesting a new sentencing hearing before a different judge.[4]  Sisavangone argued that the trial court erroneously exercised its discretion because the court approached the decision with a "made-up mind"; the court "diminished" Sisavangone's mental health and drug abuse issues; and the court made remarks "suggesting that [it] was personally offended by the recommendation of [the] presentence investigator."

¶9    The postconviction court denied Sisavangone's motion.  The court found that "[a] review of the sentencing transcript demonstrates that [the trial court] did not erroneously exercise its discretion[.]"  The court explained that:

> The full context of [the trial court's] remarks, spanning almost twenty pages of transcript, demonstrate that he thoroughly and thoughtfully considered the relevant sentencing factors, including the defendant's mental health issues, and that he did not approach sentencing with a mind made up.  T[w]o, the court finds nothing improper about [the trial court's] comments regarding the PSI writer's recommendation of seven to nine years of initial confinement, which was grossly disproportionate to the gravity of the offense.  Those comments were directed to the PSI writer and not the defendant or his attorney.

¶10    Sisavangone now appeals.  Additional relevant facts are discussed below.

---

[4] We note that the title on Sisavangone's postconviction motion states the motion is to "Modify Sentence."  The body of the motion, however, requests a new sentencing hearing before a different judge.  On appeal, Sisavangone confirms that he seeks a new sentencing hearing, so we do not examine whether he is entitled to sentence modification.

## DISCUSSION

### I.     Objective Bias

¶11     On appeal, Sisavangone argues that the trial court approached sentencing with a "made-up mind" and thus was objectively biased.  In support, Sisavangone first points to the trial court's sentencing remarks that:

> Had this case gone to trial, had the defendant not accepted responsibility, had he been convicted of first-degree intentional, I guarantee the State asks for and I give life with no parole.  This is not the same as every reckless homicide in Milwaukee, and the defendant does deserve credit for pleading guilty, and I will certainly factor that into my sentence, and I am factoring that into my sentence, but he got an amendment in this case to first-degree reckless.  Life in prison was taken off the table, and I will address this further.

Sisavangone argues that this passage reflects the trial court "pre-determined that life in prison without eligibility for supervised release was an appropriate sentence" and the trial court was critical of the State's decision to amend the charge.

¶12     A defendant has a due process right to be sentenced by an impartial judge.  *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385.  Objective bias exists in two situations: (1) "where there is the appearance of bias"; and (2) where objective facts demonstrate that a judge treated a party unfairly.  *Id.*, ¶9 (citations omitted).

¶13     Whether a judge is objectively biased is a question of law that we review independently.  *State v. Herrmann*, 2015 WI 84, ¶23, 364 Wis. 2d 336, 867 N.W.2d 772.  When evaluating a claim of judicial bias, we presume that a

judge has acted "fairly, impartially, and without prejudice." *Id.*, ¶24. A defendant may rebut this presumption by showing bias by a preponderance of evidence. *Id.*

¶14 Here, we disagree with Sisavangone that the trial court's remarks show objective bias. When reviewing the trial court's comments in their entirety, we are not persuaded that the court made up its mind prior to sentencing. The court's comment regarding life in prison was made *after* the court heard the parties' arguments and Sisavangone's allocution, watched the video of the offense, and stated that the video reflected that this was a "heinous, brutal, vicious attack[.]" *Cf. Goodson*, 320 Wis. 2d 166, ¶1 (finding bias based on a warning about the receipt of a maximum sentence that was given by the trial court prior to a reconfinement hearing); *State v. Gudgeon*, 2006 WI App 143, ¶¶1, 26, 295 Wis. 2d 189, 720 N.W.2d 114 (finding bias based on a statement in writing made by the trial court "long before" a hearing took place); *State v. Marcotte*, 2020 WI App 28, ¶19, 392 Wis. 2d 183, 943 N.W.2d 911 (finding bias when the trial court warned the defendant that if he was not successful in drug court he would be sentenced to prison if the defendant returned for sentencing after revocation of his probation).

¶15 In addition, contrary to Sisavangone's argument, the trial court did not say anything detrimental about the State's decision to amend the charge. Rather, the court observed that Sisavangone had received a reduction in his sentencing exposure in exchange for entering a plea.

¶16 Second, Sisavangone complains about the trial court's comments regarding the PSI. During sentencing, the trial court stated:

> The recommendation from the PSI and the defense, with all due respect, is completely inappropriate. How the Department of Corrections can with a straight face on behalf of the DOC,… on behalf of the citizens of the state, recommend seven to nine years for burning someone to death. I don't understand it. It frankly makes me want to wretch. They should have to account for that sentence. They should have to account for that recommendation. They should have to explain it, and the three to four years of extended supervision which is recommended, and even the defense conceded that's not appropriate, is even more ridiculous. I mean it's just wildly inappropriate. I can understand the State's dismay and disbelief. I can understand the victim's family dismay and disbelief.

¶17 As Sisavangone acknowledges, a trial court may reject a recommendation in a PSI. *State v. Montroy*, 2005 WI App 230, ¶12, 287 Wis. 2d 430, 706 N.W.2d 145 (stating that "a sentencing court is not bound by the PSI's sentencing recommendation"), *overruled on other grounds by State v. Tiepelman*, 2006 WI 66, ¶2, 291 Wis. 2d 179, 717 N.W.2d 1. However, Sisavangone does not sufficiently explain, nor do we observe, how the trial court's disagreement with the PSI's recommendation suggests that the court was not approaching the sentencing decision fairly. Although the court's remarks were critical of the PSI's recommendation, we are not convinced the remarks demonstrate objective bias.

## II. Erroneous Exercise of Discretion

¶18 Sisavangone also argues that the trial court erroneously exercised its discretion at sentencing. In particular, Sisavangone contends that the court "diminish[ed] the importance of [his] mental health issues" and statistics "have no bearing upon the role that [his] mental health issues played in his offense."

¶19 Prior to the sentencing hearing, Sisavangone presented a mental health evaluation completed by Dr. Collins. The evaluation diagnosed Sisavangone with major depressive disorder, persistent depressive disorder, and a

substance-related disorder involving the use of alcohol, marijuana, ecstasy, opioids, and stimulants, and observed that since Sisavangone's arrest and incarceration, he "has been initiated on an antidepressant agent." The report opined that Sisavangone would benefit from continued compliance with psychiatric treatment, periodic re-evaluations of his medication, referral to a dual-diagnoses program targeting education and relapse prevention, assistance clarifying his educational, vocation, and employment goals, monitoring to ensure that he does not have access to weapons, and the ability to foster his relationships with his family members.

¶20 At sentencing, in regards to Sisavangone's mental health issues, the trial court stated:

> The defendant … has mental health needs which he's addressed over the years by using illegally every illegal substance and drug he can get his hands on, never once addressing it appropriately. Maybe there were a couple of attempts, but never addressing it appropriately, instead medicating with drugs and alcohol and meth and cocaine and every illegal drug possible.
>
> And as the victim's family says "mental health needs are not fixed by the criminal justice system." That's right. They're not. As an individual you have to take responsibility. Again, correct. Not all people with mental health problems commit crimes. Again, correct. In fact, statistics show those 80 to 90 percent of people with mental health issues don't commit crimes.

The court later remarked that, "Maybe, Mr. Sisavangone, had you been a law-abiding citizen, maybe had you done something with your life other than snort cocaine and use meth and drink and literally be a non-productive citizen, there would be better reports here."

8

¶21    "It is a well-settled principle of law that a [trial] court exercises discretion at sentencing." *State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197.  A court may consider a variety of factors including:

> (1) Past record of criminal offenses;  (2) history of undesirable behavior pattern;  (3) the defendant's personality, character and social traits;  (4) result of presentence investigation;  (5) vicious or aggravated nature of the crime;  (6) degree of the defendant's culpability; (7) defendant's demeanor at trial;  (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention.

*Id.*, ¶43 n.11 (citation omitted).  On appeal, we will affirm a discretionary decision if the trial court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶22    Here, the trial court properly took into consideration Sisavangone's mental health and found that this did not mitigate the severity of his crime.  A trial court has discretion to determine how much weight to assign the factor considered. *State v. Fisher*, 2005 WI App 175, ¶20, 285 Wis. 2d 433, 702 N.W.2d 56.

¶23    Moreover, to the extent that Sisavangone suggests that the trial court should have placed him in "[c]ommunity based treatment and case management services" based on Dr. Collins's report, the court was not required to adopt any such recommendation.  *State v. Slagoski*, 2001 WI App 112, ¶9, 244 Wis. 2d 49, 629 N.W.2d 50, *abrogated in part on other grounds by State v. Harbor*, 2011 WI 28, 333 Wis. 2d 53, 797 N.W.2d 828.

¶24 Lastly, in regards to the trial court's reference to mental health statistics, this was simply a response to the victim's family's impact statement that mental health needs are not fixed by the criminal justice system. The fact that the majority of people with mental health issues do not commit crimes is a matter of simple common knowledge. Sisavangone does not assert that this statistic was inaccurate. *See Tiepelman*, 291 Wis. 2d 179, ¶9.

¶25 Therefore, for the reasons stated above, we reject Sisavangone's arguments and we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.